UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LAURENCE DE LEON LOMAZ, | ) | CASE NO. 5:03CV2609 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE GAUGHAN |
| v. | ) | |
| | ) | **DEFENDANT, THE HUNTINGTON** |
| OHIO DEPARTMENT OF COMMERCE, | ) | **NATIONAL BANK'S MOTION FOR** |
| DIVISION OF STATE FIRE MARSHAL, *et* | ) | **SUMMARY JUDGMENT TO HAVE** |
| *al.,* | ) | **PLAINTIFF DECLARED A** |
| | ) | **VEXATIOUS LITIGATOR AND FOR** |
| Defendants. | ) | **PERMANENT INJUNCTION** |

Pursuant to Fed. R. Civ. P. 56, Defendant, The Huntington National Bank ("HNB"),

moves this Court for summary judgment to have Plaintiff declared a vexatious litigator and for

permanent injunction under federal law and Ohio Rev. Code §2323.52, prohibiting Plaintiff

Laurence De Leon Lomaz from instituting or continuing any further litigation, either

individually or through any of his affiliates or related companies or other business entities,

without prior leave of Court to do so.

Ohio Rev. Code §2323.52(B) provides that a person who has defended against vexatious

conduct may commence a civil action "to have that person declared a vexatious litigator."

Federal law also provides for such declaration and accompanying injunction.  Plaintiff Laurence

DeLeon Lomaz is such a person and should be declared a vexatious litigator.

## INTRODUCTION

Lomaz, a two time felon,[1] has been involved in the fireworks business for many years through numerous companies.[2]  During the same period of time he has filed numerous frivolous law suits and motions *and is now threatening more*.  Between him and his various companies, he has filed 100's of ridiculous lawsuits and motions.  He has sued many of his creditors.  *In addition, he has sued many of the judges, lawyers, government officials, prosecuting attorneys and clerks of courts that have been involved in the cases which Lomaz lost.*

Now Lomaz has begun a new round of harassing actions against lawyers, creditors and others.  In addition to suing HNB for honoring a subpoena, he has sued one of HNB's lawyers and threatened to sue the rest of HNB's lawyers.  In November and December of 2004, he sent out four subpoenas to three of Porter Wright Morris & Arthur's ("Porter Wright") attorneys, all of which have been quashed.  (See Exhibits 36A-36D.)

When represented by counsel, Lomaz's conduct was at least partially held in check.  Even so, one of his lawyers was sanctioned for frivolous filings.  Other lawyers representing him have withdrawn.   In any event, Lomaz, his companies and his lawyers have all engaged in frivolous conduct and harassment.

The Court has the authority to stop this harassment and should do so.  Accordingly, HNB requests that this Court enter summary judgment in its favor and declare Plaintiff Lomaz to be a

---

[1]  *See Midwest Fireworks Man. Co., Inc. v. U.S. Dept. of Treasury,* B.A.T.F., 840 F.2d 17 (6th Cir. 1988) (Exhibit 2A) (reciting his conviction for impersonating an FBI officer and has willful falsification of applications for explosives manufacturing licenses).  He was also convicted of a felony of illegal sale of gun powder.  See deposition transcript extract, Exhibit 2B.

[2]  The names of the companies includes Midwest Fireworks Manufacturing Co. Inc., Midwest Fireworks Manufacturing Co. Inc. II, Pacific Financial Services of America, Inc., Buckeye Fireworks, Grand Slam Fireworks, Sky Slam Fireworks, Midwest Input Export and Lomaz Financial Services.  Most of these have either not been incorporated or not fully incorporated.  Many have used the same EIN numbers.  Lomaz has apparently used these shell corporations to evade his creditors.  See Memo in Support, p. 8, ¶11 and Exhibit 37A

vexatious litigator and to enter the order attached as <u>Exhibit 1</u>.  The grounds for this motion are set forth more fully in the attached Memorandum in Support.

Respectfully submitted,

<u>/s/ David C. Tryon</u>
David C. Tryon (0028954)
Rebecca Kucera Fischer (0071052)
PORTER WRIGHT MORRIS & ARTHUR LLP
1700 Huntington Building
925 Euclid Avenue
Cleveland, Ohio 44115
(216) 443-9000 Phone / (216) 443-9011 Fax
dtryon@porterwright.com
rfischer@porterwright.com

*Attorneys for Defendant*
The Huntington National Bank

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LAURENCE DE LEON LOMAZ, | ) | CASE NO. 5:03CV2609 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE GAUGHAN |
| v. | ) | |
| | ) | **MEMORANDUM IN SUPPORT OF** |
| OHIO DEPARTMENT OF COMMERCE, | ) | **DEFENDANT, THE HUNTINGTON** |
| DIVISION OF STATE FIRE MARSHAL, *et* | ) | **NATIONAL BANK'S MOTION FOR** |
| *al.,* | ) | **SUMMARY JUDGMENT TO HAVE** |
| | ) | **PLAINTIFF DECLARED A** |
| Defendants. | ) | **VEXATIOUS LITIGATOR AND FOR** |
| | | **PERMANENT INJUNCTION** |

In support of the foregoing Motion, Huntington National Bank ("HNB") sets forth the following facts and law.

## PROCEDURAL HISTORY OF THIS CASE

On May 27, 2003, Plaintiff Laurence De Leon Lomaz ("Lomaz") filed his initial complaint (the "Complaint") in this case in Portage County Common Pleas Court against several defendants, including The Huntington National Bank ("HNB"). In the Complaint, Lomaz made no factual claims against HNB except that HNB was "making WAR" (emphasis in original) against Lomaz. On December 11, 2003, Lomaz filed an Amended Complaint against HNB only, in which he claimed that he was a resident of Hawaii and asked for over $10,000,000 in damages. He also claimed HNB violated certain federal laws by honoring a subpoena for bank records. HNB timely removed this case to Federal Court based on both diversity and federal question grounds. HNB timely answered and asserted a counterclaim to have Lomaz declared a vexatious litigator. This Court denied Lomaz' subsequent motion to remand. Accordingly, this

Court has jurisdiction to declare Lomaz a vexatious litigator under both the Ohio state statute

(diversity jurisdiction) and under federal common law (federal question jurisdiction).

## FACTUAL BACKGROUND

As long ago as 1983, the Ohio Ninth District Court of Appeals sustained sanctions

against Lomaz because of his abuses of the legal system.  The Court pointed out that *Lomaz*

*"was threatening & abusive to Tinger's  attorneys..."* (emphasis added).  The trial Court also

pointed out Lomaz' refusal to follow Court Orders:

> At this time the court would further note for the record that in the 29 years I had
> been a lawyer and actively engaged in the practice of law, **I have never seen a
> litigant who so blatantly avoided any discovery in a lawsuit and, further, who
> ignored the orders of the court** with respect to discovery as **Mr. Lomaz** has
> done on behalf of himself and the corporations which he apparently owns and
> operates.

*Tingler v. Buckeye Fireworks Manu. Co. et al.,* 12 Ohio App 3d 58, 61 (Ohio Ct. App.

1983),.  (Emphasis added.)

Lomaz's abusive conduct has continued unabated.  Recently it has become even uglier.

Lomaz claims that HNB, the State Fire Marshal and the Portage County Prosecutor are working

with the Youngstown "MOB" against him, and that HNB "has waged WAR" against him.  See

Complaint filed in this case, Exhibit 16.  The following is a summary of a fraction of his actions.

1. After pleading guilty to misdemeanor violations of fireworks laws, *Lomaz sued the
   prosecuting attorneys* who had prosecuted him *as well as the State Fire Marshal*, for
   alleged violations of his constitutional rights (another conspiracy theory).  The court
   dismissed the case.  Lomaz filed a frivolous appeal.  The Court of Appeals affirmed
   the dismissal.  *Lomaz v. Hennosy*, 1998 Fed App. 0227P (6th Cir., 1998), Exhibit 3.

2. In order to stop a foreclosure sale in Ashtabula County from going forward, on the
   day of the sheriff's sale Lomaz had his attorney file a notice of stay based on a year
   old bankruptcy filing of a Lomaz owned entity, Midwest Fireworks Manufacturing,
   Inc. (i.e. Midwest I).  See Exhibit 4A.  The court assumed that the filing was in good
   faith and issued an immediate stay of the sale.  However, this was a fraudulent filing
   because Midwest I *was never a party to the foreclosure action and never had any
   interest in the real property to be sold*.  Moreover, this was the *third* time Lomaz had
   fraudulently delayed that sale.  See Motion for Sanctions w/o case law exhibits,

Exhibit 4B.  Lomaz's attorney was ultimately sanctioned for this action. (Ashtabula County Case No. 2000-CV-220), Exhibit 4C.

3.   In conjunction with The State of Ohio trying to collect a judgment against Lomaz (Portage County Case No. 98 CV 0622), the State obtained the appointment of a receiver, Stanley Stein, Esq. (the "Receiver"), over 2 of Lomaz' companies' assets, which included the fireworks (the "Fireworks") owned by Midwest Fireworks Manufacturing Co. II ("Midwest II")and Pacific Financial Services of America, Inc. ("Pacific"), both located in Northeastern Ohio.  The Court determined that Lomaz' companies were his alter egos.  See Exhibit 5A, p. 3, ¶1(a).  The court-appointed Receiver sold the Fireworks by court order.  The court specifically approved of the sale to Colonial Fireworks of America.  (Portage County Case No. 98 CV 00622; the "Receivership Case"),  Exhibit 5B, p. 2.

In response to these lawful actions, Lomaz did the following:

   a.   Lomaz *sued the Judge*. (11th Dist. Ct. App. No. 03 PA 0057) Exhibit 6.

   b.   Lomaz repeatedly tried to intimidate the Receiver by (i) threatening to sue him in federal court in Nevada, instead of Ohio where the receivership property was located (Exhibit 7A, 7D); (ii) accusing the Receiver of being "lazy" and "dishonest" (Exhibit 7B-1, p. 2); (iii) accusing him of siding with "bandits" IWARR and Gibel (see ¶5 below) and threatening to have him "in depositions for days" (Exhibit 7C); and (iv) threatening him with criminal prosecution (Exhibit 7D).

   c.   *Lomaz finally did sue  the Receiver on August 5, 2004*.  (Portage County Case No. 2004 CV 00857)  Exhibit 7E.

   d.   Lomaz also threatened to sue David Douglass, the attorney representing The State of Ohio in the Receivership Case.  (Exhibit 7B-1).

   e.   He implied he would sue the State Fire Marshal (see letters to Hillary Damaser, in-house counsel to the State Fire Marshal, Exhibit 8).[3]

   f.   *Lomaz also sued the Court-approved fireworks purchaser, Colonial Fireworks, as well as all of its employees*.  (Portage County Case No. 2003 CV 01154).  See court order approving purchase, (Exhibit 9A) and Lomaz's subsequent lawsuit (Exhibit 9B).

4.   The Fireworks, which were part of the Receivership mentioned in item 3 above, became exposed to the weather and open to public access by actions of a third party (Albert Gibel – after he obtained legal title – see ¶8 below).  The

---

[3]  While threats of suit sometimes may not be considered frivolous, the fact that Lomaz has frequently followed up with frivolous lawsuits can create a chilling effect on any legitimate actions by creditors or other parties.  Therefore, the Court should consider his threats in determining that Lomaz is a vexatious litigator.  Indeed, such threats fall within the definition of "vexatious conduct" under the Ohio statute.

3

State Fire Marshal filed suit to allow it to secure the premises.  Exhibit 10A.The Court granted the Fire Marshal injunctive Relief.  (Portage County Case No. 2003 CV 00122; the "Fire Marshal Case")  Exhibit 10B.

In response, Lomaz, who was not a party to the case,[4] harassed the Court and the Fire Marshal by (among other things)

    a.  *filing ridiculous pro se motions,* such as a motion to *force the Fire Marshal to clean the bathrooms on a vacant property.*  Exhibit 11.

    b.  *Threatening to file "hundreds of motions."*  Exhibit 11.

    c.  Entering the property in violation of repeated Court orders not to enter. On May 9, 2003, the court ordered Lomaz not to enter the property. See Exhibit 12A, ¶7.  Ignoring this, on June 21, 2003 he entered the premises and harassed the State Fire Marshal official and the court approved fireworks purchaser.  See Exhibits 12B and 12C.  See also Exhibit 12D.

5.  In 1999, George Gibel (Atty Reg. No. 0066965) issued a subpoena in Cuyahoga County Case No. 367569, to HNB to supply documents regarding a loan HNB had made to Pacific Financial Services of America, Inc. ("Pacific"), one of Lomaz's companies.  Exhibit 13.  HNB honored the subpoena as required by law and supplied documents for a loan HNB made to Pacific. Lomaz never filed a motion to quash the subpoena.  Instead Lomaz responded as follows:

    a.  In 2002 (three years after the subpoena had been issued), Lomaz had Pacific file suit in Ashtabula Common Pleas Court against HNB for honoring the subpoena, even though HNB was required by law to honor it. (Ashtabula County Common Pleas Court Case No. 2002 CV 0086; the "Ashtabula Subpoena Case").  The Court dismissed this Complaint with Prejudice.  Exhibits 14A, 14B.

    b.  HNB had previously filed a foreclosure action in Portage County in which Lomaz's company, Pacific, was a defendant (the "Portage Foreclosure Case").  Lomaz had Pacific file a counterclaim against HNB in the Portage Foreclosure Case for the exact same claim as the Complaint in the Ashtabula Subpoena Case.  Exhibit 15A.  HNB's motion for summary judgment is pending in the Portage Foreclosure Case, but has not been resolved since Lomaz put Pacific into Bankruptcy.  (Portage County Case No. 2001 CV 1007).Exhibit 15B.  The complete description the Ashtabula Subpoena Case and the Portage Foreclosure Case is set forth in HNB's

---

[4]  The plaintiff initially named Lomaz as a party, but dismissed him shortly thereafter.  See dismissal, Exhibit 10C.  *After* his dismissal Lomaz filed over a dozen motions designed to hinder the case and harass the parties.

CLEVELAND/310908 v.01

"Motion for Judgment on Plaintiff's Complaint Under Rule 12(B)(6) and/or 12(C) or, in the Alternative, for Summary Judgment," filed on February 9, 2005, which is incorporated by reference hereat.

c.   Finally, Lomaz brought this law suit against HNB in his own name, *pro se,* for the exact same claim of honoring the subpoena, even though the subpoena had nothing to do with him personally, and in spite of its prior resolution against him in the Ashtabula Subpoena Case.  See Amended Complaint in this case:  U.S. District Court Case No. 503 CV 2609.  (Case removed from Portage County Common Pleas Court, Case No. 2003 CV 00548).

d.   Lomaz also sued the Ohio Fire Marshal and County Prosecutor Timothy Collins in this case claiming that they and HNB were conspiring with the Youngstown "MOB" against him and that HNB has "waged WAR" against him.  The court dismissed the claims against the Ohio Fire Marshal and the County Prosecutor.  See Complaint, <u>Exhibit 16</u> and docket in this case.

6.   Lomaz threatened Attorney George Gibel (and Albert Gibel) with both civil litigation and criminal prosecution and then sued *Attorney George Gibel* for his representation of Albert.  (Portage County Common Pleas Case No. 2003 CV 00546).  <u>Exhibits 17A and 17B</u>.[5]

7.   In 2000 HNB obtained a judgment (the "Judgment") against Lomaz and Pacific in Case No. CV-00-404730, *HNB v. Pacific Financial Services of America, Inc., et al.,* Cuyahoga County Common Pleas Court, <u>Exhibit 19</u>.  In March 2004 HNB took collection actions against Lomaz' personal assets, including those located in his apartment at 2249 Elm Street, Suite 502 Cleveland (the "Cleveland Residence").  After numerous delays caused by Lomaz, the court finally ordered the County Sheriff's office to execute against, tag and remove the personal assets of Lomaz located at the Cleveland Residence, which he identified in numerous court proceedings as his residence.[6]   Attorney Rebecca Kucera Fischer ("Ms. Fischer") of Porter, Wright, Morris and Arthur ("Porter Wright") represented HNB in these court proceedings.  The Sheriff executed against those assets.  <u>Exhibit 20</u>.  In response Lomaz could have filed the appropriate paperwork before Judge Griffin within 5 days claiming that the assets were exempt.  *See* Ohio Rev. Code §2329.091.  He did not do so.

---

[5]  Lomaz at one time employed Albert Gibel (not Attorney George Gibel) and there have been legal disputes between them for years.  They each claim the one stole from the other.

[6]  As part of the seizure, the Sheriff seized documents which Lomaz claims are legal documents.  He has failed to file the proper papers to return them and his attorney refused to go and inspect them at the storage site, even after HNB invited him to do so.  Instead, he has threatened to sue, and has sued, Huntington National Bank's attorneys.

a. *Instead, Lomaz tried to intimidate Ms. Fischer by sending her repeated threatening e-mails and suggesting to her that he had been stalking her by telling her in the e-mails:* **"Get yourself a make over.  You look a little rough."** Exhibit 21.[7]

b. Lomaz also threatened to file a disciplinary action against Ms. Fischer. Exhibit 22.

c. He also threatened to sue her.  Exhibit 22.

d. Finally, he filed suit against Ms. Fischer.  (Cuyahoga County Case No. 04-532663).  Exhibit 23A.  The Court granted summary judgment in favor of Ms. Fischer.  See Exhibit 23B.

e. In addition, Lomaz has now threatened to sue Attorney David Tryon of Porter Wright, apparently for his involvement in the case.  Exhibit 24.

f. Lomaz has also threatened to sue James Ehrman of Porter Wright, who regularly wears bow ties rather than long ties, stating: *"This will also settle the NEW Pacific case that will rattle bow tie, and make it spin like a prop."*  See Exhibit 25.

g. On March 12, 2004, Lomaz also filed "Defendant Lomaz's Request for Return of Records and for Emergency Hearing" in *United States v. Midwest Fireworks Mfg. Co., Inc.*, U.S. Dist. Ct. Case No. 5:99 CV 2240. The court denied the motion, as noted on the face thereof.  (See Exhibit 26);

h. On March 31, 2004, Lomaz filed "Debtor-Lomaz's Request for Return of Records and For Hearing on April 8, 2004" in the Bankruptcy Court *In re Laurence D. Lomaz*, Case No. 04-13227, Exhibit 27A.  The Court denied it and admonished Lomaz for filing it.  (See Exhibit 27B);

i. On November 15, 2004, Lomaz filed the same motion in a *third* unrelated Portage County case which was no longer in Portage County (having been removed to bankruptcy court).  See Portage County Case No. 2001-CV-01007 (the foreclosure case).  Exhibit 28A-1.  HNB was forced to expend resources opposing this motion in a court which no longer even had the case.  The Motion was denied.  Exhibit 28A-2.  The court further ordered "that Defendant Larry Lomaz shall not file any further motions or paper in this court . . ." *Id.*

j. On November 29, 2004, Lomaz filed a Motion to Return Records in a *fourth* case: Portage County Case No. 03-CV-00929.  The Motion was denied.  Exhibit 28B-1; 28B-2.

---

[7] This was particularly disquieting because at the time of the Sheriff's seizure, Lomaz's apartment was full of stacks of pornography, sex toys and graphic portrayals of naked women.  See Exhibit 18.

The only proper forum and method to address Lomaz's grievance in regard to the Sheriff's Execution would be to have filed the exemption papers within 5 days in the court that granted the order allowing said execution.  He did not do that.

8.  Previously, Lomaz engaged in litigation with Albert Gibel (not the attorney, George Gibel, noted above).  As a result of that litigation, The 8th District Court of Appeals ordered Lomaz to transfer certain property to the Cuyahoga County Clerk of Courts.  See Appeals Court Order, <u>Exhibit 29A</u>. Subsequently (in 2003),the Cuyahoga County Common Pleas Court ordered the property transferred to Albert Gibel.  See <u>Exhibit 29B</u>.  Gibel then took possession of the property and began to remove the buildings that the court had previously ordered removed (in 1985).  See ¶9(a) below.  Albert Gibel then transferred the property to a company called IWARR.  Lomaz then sued Gibel for taking possession of the property and his actions thereon.  <u>Exhibit 29C</u>.  Portage County Common Pleas Case No. 2003 CV 01292.  That case was later dismissed.  <u>Exhibit 29D</u> (Lomaz later also sued IWARR, apparently for taking possession after receiving the deed.)

9.  Lomaz has refused to follow numerous court orders and has been held in contempt of court and even put in jail for his contempt.

a.  In 1985, Lomaz and his corporations were held in contempt of court for refusing to follow a court order to remove certain buildings from the Deerfield, Portage County property.  (This is the property subject to the Portage Foreclosure Case; see ¶5(b) above.)  The Court sentenced Lomaz to ten days in jail and two $500 fines.  Additionally, Lomaz' companies were fined $500/a day prospectively for non-removal of buildings violating zoning regulations.  Even though affirmed by the Court of Appeals, Lomaz <u>never</u> removed the buildings and never paid the fines. *Deerfield Twp. Trustees v. Buckeye Fireworks, Larry Lomaz, et al.* (June 10, 1988)  Portage Co. App. 1711; 1988 Ohio App. Lexis 2191.  <u>Exhibit 30</u>.

b.  Lomaz was again held in contempt for his refusal to comply with court orders, Cuyahoga County Common Pleas Court Case No. CV-98-367569 resulting in 30 days in jail in July 2002.  See docket, July 26, 2002 entry, <u>Exhibit 31</u>.

c.  In August 2002, he was held in contempt of court a second time in the same case (¶9(b)), and was sentenced to 30 days in jail and a $250 fine. See August 7, 2002 docket entry.  <u>Exhibit 31</u>.

d.  Lomaz disobeyed another court order by failing to post a required bond. *Midwest Fireworks Manufacturing Company Inc. v. Albert Gibel, et al.*, Cuyahoga County Court of Common Pleas Case No. CV-367569.  Exhibit 33.

e.  In Portage County Case No. 98 CV 410, Lomaz's companies, Pacific and Midwest II, ignored court orders regarding rock concerts held on the company's property.  In September 1998 they were held in contempt and fined.  Exhibit 34A.  The subsequent appeal by defendants was dismissed.  Exhibit 34B.  The court held them in contempt again on September 12, 2001 for again violating the orders.  See docket, September 12, 2001 entry, Exhibit 34C.  According to the docket, the order was affirmed on appeal.

f.  In 1993 Lomaz sued (among others) Edinburg Township (Portage County Common Pleas No. 93CV0406).  The court dismissed Lomaz's complaint and ordered him to pay the Township attorneys fees as sanctions.  Exhibit 35.

10. In late 2004 Lomaz began to lash out against Porter Wright's attorneys in new ways.  He sent four invalid subpoenas to Attorneys Rebecca Fischer, David Tryon and James Ehrman.  All four of them were quashed.  See Exhibits 36A-36D.

11. Lomaz placed his Ohio Fireworks entities into Bankruptcy.  *In re Midwest Fireworks Mfg. Co., Inc., II* (Bankruptcy Case No. 03-18559) and *In re Pacific Financial Services of America, Inc.* (Bankruptcy Case No. 03-11098).  Based upon numerous acts of fraud & deception detailed in Exhibit 37A (Motion for Appointment of Trustee w/o exhibits), the Bankruptcy Court the unusual step of appointing a Chapter 11 Bankruptcy Trustee over each one of them.  Exhibit 37B.  Apparently Lomaz filed both of these bankruptcies purely to cause delays in the state foreclosure actions.  Lomaz made no effort to reorganize or rehabilitate either debtor and actively fought the efforts of HNB to do so.  Then, in September 2004 he filed motions to dismiss each of them.  In November 2004, the Court dismissed the Pacific Bankruptcy.  Exhibit 37C.

12. Lomaz filed an voluntary personal Chapter 13 bankruptcy case in Hawaii on June 5, 2003, Case No. 03-01747 which he never intended to prosecute.  (See Case Docket #1, Exhibit 38A.)  He then taunted HNB's officer, John Kohl, with a June 10, 2003 fax stating *"Hope you enjoy the first class tickets for Porter Wright.  See you in Honolulu (50-100K)."*  Exhibit 38B.  He failed to file any of the requisite schedules and statement of financial affairs with his bankruptcy petition.  Despite asking for and receiving an extension of time from the court in which to file these items, he never did file the necessary documents.  A month later, Lomaz moved to dismiss the case, which the Bankruptcy Court granted on July 9, 2003.  The court barred Lomaz from

filing a subsequent bankruptcy petition for 180 days following the dismissal. See Docket #8, <u>Exhibit 38A</u>.

13. Lomaz also filed a suit against Second National Bank in Portage County, Ohio claiming the bank stole three safety deposit boxes full of rare coins and a Honus Wagner baseball card.[8]  The suit asks for $450,000 plus over $1,400,000 in punitive damages.  Of course, the Complaint does not recite any evidence of which would show Lomaz ever owned such coins or baseball cards.  A copy of the complaint in that matter, *Lomaz v. Second National Bank*, Case No. 2004 CV 00662, Portage County Common Pleas Court is attached hereto as <u>Exhibit 39</u>.

14. Finally, even the instant case is a prime example of vexatious litigation.

a)  It is Lomaz's attempt to relitigate, in a *third* forum, a matter involving a validly issued subpoena to which HNB responded.  As stated above, this was the sole issue in the complaint filed on January 24, 2002 in *Pacific Financial Services of America, Inc. v. The Huntington National Bank*, Ashtabula County Common Pleas Court, Case No. 2002 CV 0086.   That case was dismissed for failure to state a claim upon which relief could be granted on May 13, 2002.  It was also the subject of his claims in Portage County Case No. 2003 CV00548.  Clearly, the claims raised by Lomaz in this case in both the Complaint and Amended Complaint are not warranted by existing law.  (See Motion for Summary Judgment filed with respect to Plaintiff Lomaz's Complaint filed on February 9, 2005, incorporated by reference hereat.)  Not only is the underlying claim frivolous, the multiple filings also constitute frivolous, vexatious conduct.

b)  During the course of this case, Lomaz has also ignored the Court's orders.  He was ordered to make himself available for a telephone status conference on October 25, 2004.  He did not do so.  Subsequently, the Court scheduled an in-person status conference on a date actually requested by Lomaz – February 16, 2005.  Counsel for HNB appeared.  Lomaz did not.

Lomaz is now pursuing most, if not all actions, *pro se*.  However, his proceeding on his own is no excuse for his filing multiple improper claims.  Indeed, Federal courts have held that "In general, litigants proceeding *pro se* are held to the same procedural standards as those with counsel."  *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992);  *U.S. v. Distefano*, 279 F.3d

---

[8]  The Honus Wagner baseball card may be the most valuable baseball card in the world.  Recently it sold for over $1,000,000, <u>Exhibit 40</u>.  One wonders how Lomaz obtained one and yet did not insure it.  Indeed, why did he not insure the $400,000 plus in gold coins?  If he has a $1,000,000 baseball card, and $400,000 in gold coins, why hasn't he paid HNB the $500,000 (plus) he owes HNB?  As it turns out, one of the bank's safety deposit boxes,

1241, 1245 (10th Cir. 2002) (court granted plaintiff U.S.A. summary judgment against *pro se* defendant).  Ohio courts have imposed this same standard on *pro se* litigants.  *See State ex rel. Fuller v. Mengel,* 100 Ohio St.3d 352, 2003 Ohio 6448, at P10, 800 N.E.2d 25, quoting *Sabouri v. Ohio Dept. of Job & Family Serv.*, 145 Ohio App.3d 651, 654, 763 N.E.2d 1238 ( Ohio Ct. App. 2001) (Pro se litigants such as Mulhollen "'are presumed to have knowledge of the law and legal procedures and * * * are held to the same standard as litigants who are represented by counsel.'").

All of the foregoing constitutes vexatious conduct and this is only the tip of the iceberg.  Lomaz and his entities have been involved with many more cases.  HNB does not ask the Court to prevent Lomaz from protecting any of his legitimate interests in court, only that he make an initial showing to the Court that his complaint or motion is legitimate  *See e.g.* Ohio Rev. Code §2323.52(D) and (F).  His intended victims should have the opportunity to oppose his request.  Only this way can Lomaz' harassment be stopped.

## LAW AND ARGUMENT

### A.    Summary Judgment Standards

Summary judgment is appropriate when there is no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  Once a motion for summary judgment is filed and a prima facie case made that there is no material fact in dispute, the nonmoving party must set forth facts (properly supported) showing that there is a genuine issue on an essential element of the nonmoving party's case.  Disputes over irrelevant or inconsequential facts do not preclude

---

apparently belonging to someone else, did have a "Honus Wagner card."  Whether or not it is real remains to be seen.  See Court documents filed by Second National Bank, Exhibit 41.

summary judgment; only genuine disputes over *material* facts preclude summary judgment. *Anderson,* 477 U.S. at 247-48.

**B.**     **The Ohio Vexatious Litigator Statute**

HNB is entitled to summary judgment on its counterclaim. Ohio's vexatious litigator statute, R.C. § 2323.52, allows a HNB, as one subjected to such vexatious conduct, to pursue a civil action to have Lomaz declared a vexatious litigator, thereby prohibiting him from filing additional actions, motions or appeals without leave of court.[9] The statute provides in pertinent part as follows:

(A) As used in this section:

(1) "Conduct" has the same meaning as in section 2323.51 of the Revised Code.

(2) "Vexatious conduct" means conduct of a party in a civil action that satisfies any of the following:

(a) The conduct obviously serves merely to harass or maliciously injure another party to the civil action.

(b) The conduct is not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law.

(c) The conduct is imposed solely for delay.

(3) "Vexatious litigator" means any person who has habitually, persistently, and without reasonable grounds engaged in vexatious conduct in a civil action or actions, whether in the court of claims or in a court of appeals, court of common pleas, municipal court, or county court, whether the person or another person instituted the civil action or actions, and whether the vexatious conduct was against the same party or against different parties in the civil action or actions. "Vexatious litigator" does not include a person who is authorized to practice law in the courts of this state under the Ohio Supreme Court Rules for the Government of the Bar of Ohio unless that person is representing or has represented self pro se in the civil action or actions.

\*     \*     \*

(D) (1)    If the person alleged to be a vexatious litigator is found to be a vexatious litigator, subject to division (D)(2) of this section, the court of common pleas may enter an order prohibiting the vexatious litigator from doing one or more of the following without first obtaining the leave of that court to proceed:

(a) Instituting legal proceedings in the court of claims or in a court of common pleas, municipal court, or county court;

(b) Continuing any legal proceedings that the vexatious litigator had instituted in any of the courts specified in division (D)(1)(a) of this section prior to the entry of the order;

(c) Making any application, other than an application for leave to proceed under division (F)(1) of this section, in any legal proceedings instituted by the vexatious litigator or another person in any of the courts specified in division (D)(1)(a) of this section.

Ohio Rev. Code Ann. 2323.52 (2004).

The meaning of "conduct" for purposes of this statute is broad.  It is not limited to filing motions, complaints, pleadings or the like.  It encompasses *all actions* taken "in connection with a civil action."  Specifically, R.C. § 2323.52 states (in relevant part):

(1) "Conduct" means any of the following:

(a) The filing of a civil action, the assertion of a claim, defense, or other position in connection with a civil action, *or the taking of any other action* in connection with a civil action (emphasis added);

\* \* \*

Thus, not only do Lomaz' actions in filing specious lawsuits, motions and briefs constitute "vexatious conduct," but his threats to file retaliatory lawsuits in connection with other lawsuits, threats of personal harm, threats of disciplinary actions, threats of criminal actions, sending out specious subpoenas and refusal to follow court orders also constitute "vexatious conduct."

Federal law also provides for the imposition of the "vexatious litigator" classification and for the issuance of a permanent injunction precluding a litigant from taking further legal action

---

[9]   The Court can make the determination under the Ohio statute based on diversity jurisdiction.

without leave of court.  *See Filipas v. Lemons*, 835 F.2d 1145, 1146 (6th Cir. 1987) (holding that an order requiring leave of court before plaintiffs file any further complaints is the proper method for handling the complaints of prolific litigators); *Gordon v. United States Department of Justice*, 558 F.2d 618 (1st Cir. 1977) (per curiam) (stating that the law is well established that it is proper and necessary to issue an injunction barring a party from filing and processing frivolous and vexatious lawsuits).

Moreover, the Court should note that "the traditional standards of injunctive relief need not be satisfied regarding a vexatious litigant . . ."  *Kersh v. Borden Chemical*, 689 F. Supp. 1442, 1450.  (E.D. Mich. 1988).  Injunctive relief standards are not required because, as the court explained, vexatious litigants create great harm and intimidate their victims into silence.

> Indeed, in cases such as the instant one, private parties and their counsel (who may have to notify an insurance carrier of actions against them no matter how frivolous) may well decide that the course of wisdom is not to seek injunctive relief, which may only generate new harassing actions, but to hope the malicious litigant finds new quarry.  A history of litigation entailing "vexation, harassment and needless expense to [other parties]" and "an unnecessary burden on the courts and their supporting personnel" is enough.  *Matter of Hartford Textile Corp.,* 681 F.2d 895, 297 (2d Cir. 1982), *cert denied,* 459 U.S. 1206, 103 S.Ct. 1195, 75 L.Ed.2d 439 (1983).

Id.  Lomaz has certainly harmed and intimidated his litigation targets and the Court should stop him.

### C.    Lomaz Is A Vexatious Litigator

Lomaz has been engaged in vexatious conduct for years.  He has attempted to relitigate HNB's honoring a subpoena in three forums, even after losing in one.  Lomaz has collaterally attacked the legal execution of judgment against his personal property in five forums which have no jurisdiction over that execution.  He has threatened litigants, sued judges, ignored court orders and claimed vast conspiracies against him.

13

The above-described conduct is the epitome of vexatious litigation.  For example, courts have recognized that repeated assertions of the very same claims in multiple jurisdictions is vexatious litigation.  In *Castrataro v. Urban*, 155 Ohio App.3d 597, 802 N.E.2d 689, 2003 Ohio 6953 (Ohio Ct. App. 2003), a medical patient (Linda Castrataro) filed three lawsuits against her doctor (Dr. Urban), all based on the same conduct.  The first, filed in Franklin County, was ultimately dismissed by the court without prejudice.  Castrataro later (March 13, 2001) filed a new case in Franklin County based on the same facts; suing for medical malpractice.  Two months later, she filed another complaint against the same doctor based on the same facts, but filed it in Delaware County and  asserted a breach of contract claim.  In September 2001, she sued a hospital involved with the same treatment, but this time in federal court.  The federal court dismissed that case on jurisdictional grounds.  Thereafter, Dr. Urban was granted summary judgment in the second Delaware case.  Thereafter, on November 18, 2002 Castrataro filed a third complaint against the doctor in Delaware County using another theory of law.  Dr. Urban filed a counterclaim to have Castrataro declared a vexatious litigator.  The Delaware Court subsequently granted Dr. Urban summary judgment in that case also and then declared Castrataro to be a vexatious litigator based on her repeated filings.  The Court of Appeals affirmed the declaration that Castrataro was a vexatious litigator based on these three filings, and stated:

> Thus, plaintiff has habitually, persistently, and without reasonable grounds engaged in vexatious conduct in civil actions before this court against the defendant.

Id*.  at 608, ¶58.  *See, also, Gweyn v. Kluge*, Wood Co. Com. Pleas 97-CV-408 (Sept. 16, 1998) at 5; Exhibit 42.  (The court declared Kluge a vexatious litigator and stated that eight frivolous filings are deemed adequate to declare a litigant "vexatious").

14

Lomaz's actions, as discussed above, far exceed those of Ms. Castrataro or Mr. Kluge. As such this Court is more than justified in finding that Lomaz's conduct is vexatious.

### D.    Even If Lomaz's Intentions Are Pure, He Is Still A Vexatious Litigator

Even if Lomaz actually believes that his numerous and duplicative filings have merit, his beliefs and intentions are irrelevant.  His actions as recited in pp. 1-9 are harassing, frivolous and vexatious.  He has forced HNB and others to respond to each of these legally unsupported motions costing time, legal fees and untold frustration and anxiety.  He has even sued attorneys and judges for doing their jobs.

Undoubtedly Lomaz will say that he actually believes that he is a victim and is persecuted by the government, his creditors, his ex-employees (Gibel) and the Youngstown "MOB", all acting in concert.  See Complaint filed in this action, Exhibit 16.  He may also believe that he can sue HNB for honoring a subpoena.  He may even believe that he can keep suing in one place after another until he finds a judge who lets him do as he pleases.  However, courts have held that such beliefs, even if honestly held, do not make such conduct any less frivolous or vexatious.  In *Borger v. McErlane*, No. C-010262, 2001 Ohio App. LEXIS 5544 (1st App. Dist. Dec. 14, 2001), the court explained that "vexatious conduct" is such that it:

> "*serves* merely to harass or maliciously injure another party to the civil action."
> (Emphasis supplied)  It is not necessary, therefore, that Borger intends for her
> conduct to be harassing, or that she not sincerely believe in the justness of her
> cause. Rather, it is sufficient that her conduct serves the purpose, or has the
> effect, of harassing McErlane by obligating her to respond to a legal action for
> which there is no objective, reasonable grounds.

*Id.* at *15.  *See, also, Gwyn*, supra, at 4.  Whatever Lomaz believes, his conduct is harassing and his multiple lawsuits are vexatious.

**E.**    **Lomaz's Vexatious Conduct Is Extensive And He Merits The Classification of "Vexatious Litigator."**

"As the wording of R.C. 2323.52(A)(3) readily indicates, the finding that a person is a vexatious litigator can be based upon his behavior in a single civil action or multiple civil actions." *Farley v. Farley*, 10th Dist. No.02AP-1046, 2003 Ohio 3185 (Ohio Ct. App. 2003), Exhibit 43.  Lomaz's extensive vexatious litigation is set forth above at pp. 1-9.  Many more cases could be provided, but the extensive exhibits are already over 350 pages.  Moreover, Lomaz has threatened that he will continue to initiate and maintain frivolous litigation against HNB and its attorneys (as well as others) which will necessarily require HNB (and others) and its attorneys to continuously expend time and effort in combating every frivolous pleading Lomaz files.

Lomaz may claim that his extensive frivolous litigation should be overlooked and he should not be declared a vexatious litigator because he and his lawyers have won some of motions or cases.  While he or his lawyers may have won some of the 100's of cases and motions he has been involved in, this does not reduce the problems and expenses he has created for his targets by his frivolous actions.  Victory in court does not excuse violations of Civil Rule 11 or justify other harassment and vexatious conduct.  Accordingly, Lomaz' alleged victories, if any, are simply not relevant to the issue before this Court.

**F.**    **Injunctive Relief And Declaration As A Vexatious Litigator Is The Most Appropriate Relief**

There is little or no possibility that any monetary reparations against Lomaz could correct the harm that Lomaz has caused and will continue to cause HNB and his other targets.  It appears that Lomaz, personally, is uncollectible.  Therefore, the harmed parties cannot recover from Lomaz their attorneys fees incurred from responding to Lomaz's scurrilous and frivolous filings.

Lomaz has been actively avoiding and thwarting HNB's efforts to collect HNB's $600,000 plus judgment lien.  He has undertaken great pains to maintain any personal assets he might have under the ownership of a multitude of unidentifiable shell corporations.  As this Court is aware from its dealings with Lomaz (of which the court may take judicial notice – *See* Evid. R. 201), Lomaz constantly moves between and among Hawaii, Ohio and Las Vegas.  Further, he does not respond to court orders requiring his presence.  *See infra* at p. 7, ¶¶9(b)(c); p. 9, ¶15(b).  Even if monetary sanctions were available, there is simply no way of recovering monetary sanctions against him.

HNB regularly has to respond to legal process.  As a banking association, it is involved in many lawsuits, either as a plaintiff or a defendant.  However, the suits and pleadings continuously filed by Lomaz differ both in quantity and quality.  HNB is one of Lomaz's targets and based on the past, it is reasonable to conclude that he will not stop targeting HNB unless a procedure is put in place to restrict his ability to file *frivolous* pleadings.

### G.  Lomaz Will Not Be Unfairly Harmed By This Classification

Lomaz will no doubt argue that the requested relief would be "unfair" because he would not be able to sue those who are "making war" against him.  However, the proposed remedy is fair and Lomaz's breathless assertions of "war" are absurd.  Under Ohio Rev. Code §2323.52, Lomaz is only restrained from acting without leave of the court.  Federal law is in accord.  Then, if Lomaz shows that his actions are meritorious, he can proceed.  Only frivolous litigation will be blocked by such an order.  Thus, he will not be unfairly harmed.  As the Ohio Supreme Court explained when it examined the constitutionality of the Ohio statute:

> the statute is not designed, nor does it operate, to preclude *vexatious litigators from proceeding forward on their **legitimate** claims*. Instead, it establishes a screening mechanism under which the vexatious litigator can petition the declaring court, on a case-by-case basis, for a determination of whether any proposed action is abusive or groundless. Thus,  R.C. 2323.52(F) provides that

> the court of common pleas is precluded from granting leave to the vexatious litigator unless it "is satisfied that the proceedings or application are not an abuse of process of the court in question and that there are reasonable grounds for the proceedings or application."

*Mayer v. Bristow*, 91 Ohio St. 3d 3, 14, 740 N.E.2d 656 (Ohio 2000) (emphasis added).

Lomaz is a vexatious litigator and declaring him to be so and imposing the screening process provided for in R.C. 2323.52 and federal law would indeed promote the general public welfare. "The vexatious litigator statute bears a real and substantial relation to the general public welfare because its provisions allow for the preclusion of groundless suits filed by those who have a history of vexatious conduct." *Central Ohio Transit Auth. v. Timson*, 132 Ohio App.3d 41, 50 724 N.E. 2d 458 (Ohio Ct. App. 1998).

It is clear that Lomaz abuses the legal system to harass anyone and everyone who has attempted to enforce the law against him. If there ever was a case to declare someone to be a vexatious litigator, this is it. Lomaz has harassed and tried to destroy many people in many ways. The motions, subpoenas and lawsuits Lomaz now threatens are the same as his prior conduct and are designed to annoy, harass and damage. It is proper and prudent to now restrain him as provided by Ohio Rev. Code §2323.52 and federal law.

## CONCLUSION

For the foregoing reasons, Defendant The Huntington National Bank respectfully requests that the Court grant its Motion for Summary Judgment and declare Plaintiff Lomaz a vexatious litigator and issue an injunction precluding him from instituting any further litigation

without prior leave of the court in the jurisdiction where he intends to file his action.  A proposed

Order is filed as <u>Exhibit 1</u> for the Court's convenience.

Respectfully submitted,

<u>/s/ David C. Tryon</u>
David C. Tryon (0028954)
Rebecca Kucera Fischer (0071052)
PORTER WRIGHT MORRIS & ARTHUR LLP
1700 Huntington Building
925 Euclid Avenue
Cleveland, Ohio 44115
(216) 443-9000 Phone / (216) 443-9011 Fax
dtryon@porterwright.com
rfischer@porterwright.com

*Attorneys for Defendant*
The Huntington National Bank

19

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 24, 2005, a copy of the foregoing Defendant, The Huntington National Bank's Motion for Summary Judgment to Have Plaintiff Declared a Vexatious Litigator and for Permanent Injunction was filed electronically.  Parties may access this filing through the Court's electronic filing system.  In addition the following parties were served on this date by ordinary U.S. mail:

Laurence Lomaz
Box 3072
Lihue, Hawaii 96799

Laurence Lomaz
2249 Elm Street, Suite 502
Cleveland, Ohio 44113

Laurence Lomaz
3900 Paradise Road, Suite R
Las Vegas, Nevada 89109

/s/ David C. Tryon
*One of the Attorneys for Defendant*

CLEVELAND/310908 v.01
CLEVELAND/307935 v.03