IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| Laurence De Leon Lomaz | : | Case No. 5:03-CV-02609 |
| | : | |
| Plaintiff | : | Judge:   Patricia A. Gaughan |
| v. | : | |
| | : | |
| Ohio Department of Commerce | : | |
| Division of State Fire Marshal, et al. | : | |
| | : | |
| Defendants | : | |

MEMORANDUM  OF LAURENCE DE LEON LOMAZ IN SUPPORT OF MOTION TO ALTER OR AMEND JUDGMENT DECLARING PLAINTIFF A VEXATIOUS LITIGATOR

This matter is before this Honorable Court pursuant to Fed. R. Civ. 59(e) upon the motion of Laurence De Leon Lomaz ("Lomaz") to alter or amend this Court's order of April 20, 2005 declaring Lomaz a vexatious litigator pursuant to ORC §2323.52. While this Court explained its rationale in the Court's April 20, 2005 memorandum of opinion, Lomaz respectfully submits that under the particular circumstances of this case, including the immediacy and the urgency of the numerous matters in which Lomaz is currently engaged in litigation where his personal and property rights are at stake, this Court should alter or amend the April 20, 2005 order to reflect that at a minimum a declaration that Lomaz is a vexatious litigator

as not applicable to those matters in which Lomaz is represented by licensed attorneys, and which are pending before tribunals other than the State of Ohio courts of claims, courts of common pleas, municipal courts, and county courts, as provided by ORC §2323.52.  Further, Lomaz submits that this Court should alter or amend the order of April 20, 2005 to the extent that it found Lomaz to be a vexatious litigator at all, and imposed a permanent injunction against Lomaz from appearing as a *pro se* litigant on his own behalf, based upon the glaring inadequacy and inaccuracy of the factual and legal grounds provided by HNB in support of such a draconian result.

These propositions will be discussed in further detail in the paragraphs below.

## BACKGROUND

Unfortunately, this Court is only familiar with the background and history of the disputes between Lomaz and HNB as presented by HNB in its distilled version of the facts.  Contrary to HNB's representations, however, it is HNB, not Lomaz, which has perpetuated and multiplied proceedings before tribunals throughout Northeast Ohio. By way of illustration, and not limitation, the following are proceedings commenced by HNB against Lomaz, and Lomaz's affiliates, either as original actions or in the course of related proceedings, where HNB has sought relief against Lomaz and his affiliates.  Copies of the dockets of these cases are attached hereto in Exhibit A; and consist of the following matters:

* *In Re: Laurence DeLeon Lomaz*
   United States Bankruptcy Court
   Involuntary Chapter 7
   Case No. 04-13227

* *Ashtabula County Treasurer v. Old Republic Insurance Company.*
   United States Bankruptcy Court
   Adversary Case No. 04-01381

* *Huntington National Bank v. Larry D. Lomaz*
  United States Bankruptcy Court
  Adversary Case No. 04-01429

* *In Re: 14 & 76 Fireworks, Inc.*
  United States Bankruptcy Court
  Case No. 96-42535

* *Huntington National Bank v. Pacific Financial Services of America, Inc.*
  Portage County Court of Common Pleas
  Case No. 2000-JD-79096

* *Huntington National Bank v. Laurence DeLeon Lomaz, et al.*
  Portage County Court of Common Pleas
  Case No. 2005-CV-00223

* *Huntington National Bank v. Larry D. Lomaz, et al.*
  Portage County Court of Common Pleas
  Case No. 2001-CV-01007

* *Lomaz v. Ohio Department of Commerce, Division of State Fire Marshall*
  United States District Court Northern District of Ohio
  Case No. 5:03-cv-02609

* *Huntington National Bank v. Pacific Financial Services of America, Inc.*
  Cuyahoga County Court of Common Pleas
  Case No. JL-00-126081

* *Huntington National Bank v. Pacific Financial Services of America, Inc.*
  Cuyahoga County Court of Common Pleas
  Case No. CV-00-404730

Although there is significant tension between the parties, for the limited purpose of determining Lomaz's motion to alter or amend this Court's order, Lomaz would emphasize the following:

* In the affidavit of Kevin J. Kelley, an associate at Porter Wright Morris & Arthur, LLP ("PWMA"), which represents HNB, Mr. Kelley states at ¶3 that HNB obtained judgment against Lomaz and his affiliate, Pacific Financial Services, Inc., ("Pacific") in the Cuyahoga County Court of Common Pleas, Case No. CV-00-404730, on or

about March 27, 2000. Mr. Kelley incorporates by reference the judgment as being attached as Exhibit 3A to HNB's motion for summary judgment. A perusal of Exhibit 3A reflects that the judgment lien in question is actually an aggregate of two judgments, one in the amount of $419,668.26 and the other in the amount of $117,236.11, both being rendered in the originating case. The docket of that case reflects that PWMA was counsel of record for HNB from the inception of the case until the present time. Mr. Kelley's affidavit was executed on February 7, 2005 and submitted to this Court shortly thereafter.

* In this Court's findings of fact, specific reference was made to Mr. Kelley's affidavit (Opinion, Page 2), reflecting that the judgment lien filed in favor of HNB against Lomaz and Pacific was in the amount of $536,904.11. Contrary to Mr. Kelley's affidavit, however, more than 2 ½ years earlier, in the foreclosure case filed by HNB in the Portage County Court of Common Pleas, Case No. 2001-CV-01007, in which HNB was also represented by PWMA, an affidavit was submitted on behalf of HNB executed by John Kohl, Vice President of HNB, and subscribed under oath on June 20, 2002. That affidavit reflects that the amount due HNB as of August 1, 2000 was only $383,409.76, and not the $536,904.11 claimed by PWMA in its representation of HNB before the Cuyahoga Court of Common Pleas in Case No. CV-00-404730, and as again represented to this Court in February of this year in Mr. Kelley's affidavit. A copy of Mr. Kohl's affidavit filed in the Portage County Court of Common Pleas is attached hereto as Exhibit "B"

* The glaring discrepancy between Mr. Kelley's affidavit upon which this Court relied, and Mr. Kohl's affidavit, more than 2 ½ years earlier, reflects a reduction of more


than $150,000.00 in Mr. Lomaz's liability to HNB. This liability, however, is further eroded by still another matter omitted in Mr. Kelley's affidavit, arising out of the Bankruptcy Case of *In Re: 14 & 76 Fireworks, Inc.*, Case No. 96-42535, in the United State Bankruptcy Court for the Northern District of Ohio. In that case, HNB by and through PWMA asserted an interest in funds due to Lomaz and his affiliates, which ultimately resulted in a tri-party agreement between HNB and other contesting parties resulting in a payment to HNB, in care of PWMA, on or about December 28, 2001, in the amount of $67,000.00. Copies of the tri-party agreement and the Cole Co., L.P.A. IOLTA Account Check No. 002052 are attached hereto as Exhibits "C1" and "C2". Strangely, payment of this amount is not reflected in Mr. Kelley's affidavit, nor does it appear to be evident from any pleading, proof of claim, or other filing submitted by PWMA on behalf of HNB in any pending litigation involving Lomaz and/or his affiliates. Suffice it to say, based upon Mr. Kohl's affidavit reflecting a principal balance of $383,409.76, as of August 1, 2000 and a subsequent payment of $67,000.00 on December 28, 2001, it is readily apparent that the debt purportedly owed to HNB is nearly $250,000.00 less than that which is subscribed under oath by Mr. Kelley.

\* Mr. Kelley's affidavit also references the issue of the production of a subpoena by HNB of documents requested by Albert Gibel (the "Gibel Subpoena") at ¶4. In PWMA's revisionist history of the Gibel Subpoena, PWMA neglects to inform this Court that Albert Gibel was a defendant in a civil action for recovery of embezzled funds beginning to Pacific Financial Services, and also a defendant in a criminal prosecution in the Ashtabula County Court of Common Pleas for the same activities,

pursuant to which Mr. Gibel was convicted in Case No. 98-CR-260. A copy of the criminal docket is attached hereto as Exhibit "D". Subsequently, as a convicted felon, Mr. Gibel through his brother, George Gibel, a licensed Ohio attorney, served the Gibel Subpoena on or about January 11, 1999 which is attached hereto as Exhibit "E". Upon learning of the service of the subpoena, Mr. Lomaz's former counsel, E. Roger Stewart, of the law firm of McCarthy, Lebit, wrote to Mr. Kohl at HNB regarding the serious consequences flowing from HNB divulging confidential information and documents pursuant to the Gibel Subpoena under these circumstances. A copy of the correspondence from Mr. Stewart to Mr. Kohl dated August 4, 1999 is attached hereto as Exhibit "F1". In response to Mr. Stewart's letter, Mr. Kohl indicated in his letter of August 6, 1999 that based upon HNB's investigation, there was no basis for Mr. Lomaz's "claims". Further, Mr. Kohl indicated that upon being advised upon specific facts or circumstances, HNB would make immediate investigation of such specific allegations. A copy of Mr. Kohl's letter was also served upon Jeffrey Baddley, Esquire, of PWMA, and attached hereto as Exhibit "F2". Now, in its attempt to obfuscate the true nature of the events of which transpired in 1999, notwithstanding Mr. Kohl's letter of August 6, 1999 indicating that confidential material and documents were provided in response to the Gibel Subpoena. PWMA now argues that it was incumbent upon HNB to provide this information, which was not otherwise privileged from disclosure under applicable law. At a minimum, there appears to be a direct contradiction between the position adopted by Mr. Kohl in 1999, of which PWMA was aware of by virtue of the service

copy of Mr. Kohl's letter, and the position now being advocated by PWMA to this Court.

Perhaps there is a plausible explanation for the discrepancies reflected in the above illustrations; but, at a minimum, it is clearly evident that these are all matters within the knowledge of HNB and PWMA which were not disclosed to this Court. Yet, PWMA and HNB excoriate Lomaz in his efforts to protect his personal and property interests in the face of the glaring inconsistencies adopted by HNB and PWMA during the course of the past half decade of contentious litigation.

HNB and PWMA would have this Court believe that Lomaz as a *pro se* litigant was inept and incapable of articulating legitimate and frequently successful arguments on his own behalf. To the contrary, as HNB and PWMA is only too well aware of, Lomaz is quite capable, especially as a lay person, in protecting his interests under difficult circumstances. Among some of the most difficult circumstances which can be envisioned are proceedings in the federal courts, including the District Court and the Bankruptcy Court. By way of illustration, Lomaz successfully defended the following matters, as a *pro se* litigant:

* On March 18, 2004 HNB and the State of Ohio Department of Taxation ("Ohio") filed an involuntary Chapter 7 petition against Lomaz in the United States Bankruptcy Court for the Northern District of Ohio, being Case No 04-13227 ("Involuntary Case"). A copy of the docket in the Involuntary Case is attached hereto as Exhibit "G". The distilled essence of the Involuntary Case is that after Lomaz's former counsel was required to withdraw from the Involuntary Case, Lomaz undertook the defense of the Involuntary Case as a *pro se* litigant. Indeed, Lomaz was eminently successful in doing so; and, on July 7, 2004, the Bankruptcy Court

    dismissed the Involuntary petition filed by HNB and Ohio against Lomaz. (Docket No.46). (The entire Docket is attached as Exhibit "A" in the litany of filings by HNB against Lomaz).

\* During the course of the contested hearing in the Involuntary Case on June 2, 2004, Lomaz exhibited a significant level of skill in cross-examining HNB's primary witness, David Kirkley, and again effectively reduced HNB's alleged claim in the Involuntary Case by nearly $250,000.00. To provide this Court with some *indicia* of the level of sophistication and skill exhibited by Lomaz in judicial proceedings, a transcript of the hearing held on June 2, 2004 in the Bankruptcy Court is attached hereto as Exhibit "H". Even skilled bankruptcy attorneys are confronted with serious obstacles in defending involuntary cases; and, the mere fact that Lomaz was successful in defending his own case on a *pro se* basis is highly persuasive that Lomaz is not a vexatious litigator, which is the status reserved for individuals presenting frivolous claims and defenses.

\* Another matter clearly reflecting the effective demonstration of the skill and acumen of Lomaz as a *pro se* litigator is a matter determined by United States District Court Judge Gwin in the case of *Lomaz v. Gibel*, Case No. 5:04-CV-178, decided on March 24, 2004. In that case, George Gibel, an attorney proceeding *pro se*, sought to remove a pending action from the Portage County Court of Common Pleas, in which Lomaz had sued George Gibel for his involvement and advocacy on behalf of his brother, Albert Gibel, which George Gibel sought to remove to the District Court. Lomaz filed a motion to remand on the basis that removal was improper under 28 USC §1441(b) and also untimely. Judge Gwin granted Lomaz's motion and

  remanded the case to the Portage County Court of Common Pleas. (See Docket No. 6; and, also, see Judge Gwin's memorandum of opinion and order dated March 22, 2004 reflecting the disposition of the removal action as described in this paragraph, which is attached as Exhibit "I").

\*  Moreover, it should be observed that Lomaz subsequently obtained an order awarding sanctions against George Gibel, an attorney, for his failure to provide discovery responses to Lomaz, as reflected by the Portage County Court of Common Pleas order dated March 24, 2004, attached hereto as Exhibit "J", and, pursuant to which, George Gibel paid Lomaz a sanction ordered by the court, as reflected by Exhibit "K", a copy of George Gibel's IOLTA check to Lomaz in the amount of $92.00. Further, the Portage County Court of Common Pleas proceeding was scheduled for disposition in the near future, which has been interrupted by this Court's order of April 20, 2005.

\*  Still, another example of the skill and acumen of Lomaz as a *pro se* litigator is the decision of the Supreme Court of Ohio in *State, Ex Rel. Lomaz, et al., v. Court of Common Pleas in Portage County, et al. (1988) 36 Ohio St. 3d 209.* In that matter, the Supreme Court of Ohio issued a writ of prohibition which was initiated by Lomaz as a *pro se* litigant in the trial court through by the filing of an affidavit of prejudice against a judge who was not a member of the General Division of the Court of Common Pleas, and was a member of the Domestic Relations Division of that Court. Although the ultimate disposition of the case was decided when Lomaz was represented by counsel, nevertheless, it was Lomaz who initiated the original objection to an exercise of jurisdiction by a judge where that authority was lacking.

A copy of the decision in *State, Ex Rel. Lomaz, et al., v. Court of Common Pleas in Portage County, et al.* Is attached hereto as Exhibit "L".

## DISCUSSION

### A. Applicability of Fed. R. of Civ. P. 59(e)

Fed. R. of Civ. P. 59(e) applies to the within proceeding and reads in relevant part as follows:

> Rule 59.  New Trials; Amendments of Judgments
> ***
> (e) Motion to alter or amend judgment.  Any motion to alter or amend the judgment shall be filed no later than ten days after entry of the judgment.

This Court's order entered on April 20, 2005, is subject to the ten day provision found in Fed. R. of Civ. P. 59(e); but, is also subject to Fed. R. of Civ. P. 6, governing computation of time, wherein intermediate Saturday, Sundays, and legal holidays shall be excluded in the computation.  Thus, the filing of the within motion on May 2, 2005, complies with the ten day requirement under Fed. R. of Civ. P. 59(e).

The Sixth Circuit has held that a motion seeking reconsideration of a District Court's decision is properly treated as a motion to alter or amend a judgment under R. 59(e).  See *Smith v. Hudson,* 600 F 2nd 60, 62(6th Cir. 1979).  Among other matters, pursuant to a motion to alter or amend a judgment, a District Court may proceed pursuant to R. 59(a) and "... take additional testimony, amend findings of fact and conclusions of law, or make new findings and conclusions, and direct the entry of a new judgment." *McDowell v. Dynamics Corp. of America*, 931 F2nd 380, (6th Cir. 1991).

Moreover, the Sixth Circuit has held that "motions to alter or amend judgment may be granted, <u>if there is a clear error of law</u>, newly discovered evidence, and an intervening change in controlling law, <u>or to prevent manifest injustice</u>".  *GenCorp, Inc. v. American Intern.*

*Underwriters,* 178 F 3d 804, 834 (6th Cir. 1999) (citations omitted) (emphasis supplied).  Thus, it is in this context that Lomaz submits to this Court that at a minimum a manifest injustice would befall Lomaz if this Court's order of April 20, 2005 was not altered or amended, or vacated in its' entirety, based upon the recitation of the facts and history of the contentious relationship between Lomaz and HNB, and the clearly transparent attempt by HNB to preclude access, to the judicial system.

The particular issues and impact on Lomaz presented by HNB's conduct is discussed in the following sections.

### B. Ohio's "vexatious litigator" statute does not apply to attorneys

"In diversity actions in the federal courts, the courts must apply state substantive law (except in matters governed by the United States Constitution or by Acts of Congress) and federal procedural law."  *Hanna v. Plumer*, 380 U.S. 460; *Erie R.R. v. Tompkins*, 304 US 64. "The Rules of Decision Act provides that the laws of the several states, except where the United States Constitution, federal treaties, or statutes otherwise require or provide, are the rules of decision in civil actions in federal courts, in cases where they apply."  32 Am.Jur. 2d Federal Courts §425; 28 USCA §1652.

This Court's order of April 20, 2005, outlining the application of O.R.C. §2323.52 to Lomaz in this case exceeds the statutory authority of Ohio courts.  While, in accordance with this Court's initial findings, it imposes on Lomaz the obligation to follow the procedures outlined therein, the order improperly imposes these obligations on legal counsel representing Lomaz and/or entities either owned or controlled by Lomaz.  In applying Ohio law to limit Lomaz's ability to engage in allegedly vexatious conduct, this Court cannot exceed the statutory authority granted Ohio courts by O.R.C. §2323.52.  There is no basis in O.R.C. §2323.52 or in

Ohio law supporting the portion of this Court's order requiring attorneys representing Lomaz or related entities to obtain leave of the court to file any pleadings.

This appears to be a case of first impression. Counsel has read *all* of the annotations in Baldwin's Ohio Revised Code, and has also researched the issues presented by this Court's order, and cannot find an Ohio case deciding the issue of whether any courts may order attorneys to seek leave to file pleadings on behalf of a client under O.R.C. §2323.52. This may be due to the fact that no court has previously imposed such an order, or it may be because, if that occurred, the order was subsequently amended and appeal may not have been necessary. Or, it may be that counsel simply failed to find such a case, although due diligence was certainly exercised, in any event, the absence of such a ruling on Ohio law by a court of competent jurisdiction, this issue is a matter of statutory construction.

ORC §2323.52, specifically excepts licensed attorneys from its application, except in instances where the attorney is engaging in *pro se* litigation *only*. It does not limit any individual's ability to seek legal recourse when represented by counsel, including an individual who has been determined to be a vexatious litigator in accordance with the statute. Attorneys have always had a professional responsibility to refrain from vexatious conduct and attorneys are independently subject to discipline in any and all cases. Attorneys have always been professionally bound by the Ohio Supreme Court Rules for the Government of the Bar of Ohio, the Ohio Rules of Civil Procedure, and O.R.C. §2323.51. The purpose of O.R.C. §2323.52 was to curtail the excessive, unwarranted activity of *pro se* litigants, in particular prison inmates and "militia" types.

O.R.C. §2323.52(A)(3) defines the term "vexatious litigator" as follows:

> "(A)(3) 'Vexatious litigator' means any person who has habitually, persistently, and without reasonable grounds engaged in vexatious

2904-08\Motion-Alter-Amend-Judgment.1        12

> conduct in a civil action or actions, whether in the court of claims or in a court of appeals, court of common pleas, municipal court, or county court, whether the person or another person instituted the civil action or actions, and whether the vexatious conduct was against the same party or against different parties in the civil action or actions. **'Vexatious litigator' does not include a person who is authorized to practice law in the courts of this state under the Ohio Supreme Court Rules for the Government of the Bar of Ohio** unless that person is representing or has represented self pro se in the civil action or actions." (Emphasis added)

This definition is clear.  An attorney cannot be a "vexatious litigator" except in situations where the attorney is proceeding *pro se*.

Section D of O.R.C. §2323.52 sets forth the authority of Courts to limit the litigation of vexatious litigators, who, by definition, cannot be attorneys.  It states:

> "(D)(1) If the person **alleged to be a vexatious litigator** is found to be a vexatious litigator, subject to division (D)(2) of this section, the court of common pleas may enter an order prohibiting **the vexatious litigator** from doing one or more of the following without first obtaining the leave of that court to proceed:
>
> (a) Instituting legal proceedings in the court of claims or in a court of common pleas, municipal court, or county court;
>
> (b) Continuing any legal proceedings that **the vexatious litigator** had instituted in any of the courts specified in division (D)(1)(a) of this section prior to the entry of the order;
>
> (c) Making any application, other than an application for leave to proceed under division (F)(1) of this section, in any legal proceedings instituted by **the vexatious litigator or another person** in any of the courts specified in division (D)(1)(a) of this section."(Emphasis added)

First, as previously stated, the person "alleged to be" a vexatious litigator cannot be an attorney, unless the attorney is acting *pro se*.  Second, the statute states the Court may "may enter an order prohibiting **the** vexatious litigator from doing ***."  The term "the" limits the

order to the vexatious litigator *only*, who, by definition, cannot be an attorney. The language in the balance of this section is consistent. It applies strictly to parties proceeding *pro se*.

Subsection (c) does contain the phrase "or another person." According to the rules of statutory construction, this phrase must be interpreted consistently with the balance of the statute so as not to invalidate any other part. "Any other person" refers to another party in the case, as in a defendant or a plaintiff in a suit, not to legal counsel. If it were intended to apply to legal counsel, then it would have had to have been used to modify the use of the phrase "the vexatious litigator" in the beginning of the Section, at (D)(1), and also in Subsection (D)(1)(b), immediately prior to Subsection (c). Furthermore, if it applied to legal counsel, it would effectively invalidate the definition of vexatious litigator, wherein the legislature went to the trouble of specifically excepting attorneys.

Section (D)(2) of O.R.C. 2323.52 further defines and explains the application of this statute to attorneys. It restates that the term "vexatious litigator" can only apply to an attorney when the attorney is acting *pro se*. This portion of the statute states, in relevant part:

> "(2) If the court of common pleas finds a person who is authorized to practice law in the courts of this state under the Ohio Supreme Court Rules for the Government of the Bar of Ohio to be a vexatious litigator and enters an order described in division (D)(1) of this section in connection with that finding, **the order shall apply to the person only insofar as the person would seek to institute proceedings described in division (D)(1)(a) of this section on a pro se basis**, continue proceedings described in division (D)(1)(b) of this section on a pro se basis, or make an application described in division (D)(1)(c) of this section on a pro se basis. **The order shall not apply to the person insofar as the person represents one or more other persons in the person's capacity as a licensed and registered attorney** in a civil or criminal action or proceeding or other matter in a court of common pleas, municipal court, or county court or in the court of claims.***" (Emphasis added)

Thus, even when an attorney is declared a vexatious litigator, it only applies to litigation instituted by the attorney on the attorney's own behalf, neither to nor for represented parties. It specifically states that attorneys may freely file pleadings on behalf of parties whom they represent.

Most importantly, O.R.C. §2323.52(D)(2) preserves all of the remedies for all parties with respect to any inappropriate conduct by attorneys in the following portion of the section, which states:

> "*** Division (D)(2) of this section **does not affect any remedy that is available to a court or an adversely affected party** under section 2323.51 or another section of the Revised Code, under Civil Rule 11 or another provision of the Ohio Rules of Civil Procedure, or under the common law of this state as a result of frivolous conduct or other inappropriate conduct by an attorney who represents one or more clients in connection with a civil or criminal action or proceeding or other matter in a court of common pleas, municipal court, or county court or in the court of claims." (Emphasis added)

In summary, Ohio's vexatious litigator statute applies to *pro se* litigants *only*. It does not impinge on the rights of any person to pursue legal action *when represented by counsel*. Counsel has an independent obligation to represent a party only insofar as the party pursues legitimate aims by legitimate means. Every time an attorney signs a pleading in Ohio, the attorney certifies that that is the case. Counsel is independently subject to discipline on a case by case basis.

The limitation imposed by O.R.C. §2323.52 is a state right, granted by statute. "In the enforcement of a state right, state law controls as to the proper measure of damages, [1] whether jurisdiction is based on diversity of citizenship, [2] or the presence of a federal question." 32 Am.Jur. 2d Federal Courts §440. 1] *Van Gemert v. Boeing* (CA2 NY) 553 F.2d 812; 2] *Transcontinental & Western Air, Inc. v. Koppal*, 345 U.S. 653, 97 L.Ed. 1325, 73 S.Ct. 906. "State judicial decisions are binding on federal courts, which are not free to engraft onto state

rules exceptions or modifications which may commend themselves to the federal courts, but have not commended themselves to the state courts." 32 Am.Jur. 2d Federal Courts §425, citing *Day & Zimmermann, Inc. v. Challoner*, 423 US 3, 46 L.Ed.2d 3, 96 S.Ct. 167.

In this case, the (measure of damages) remedy available to Huntington National Bank cannot exceed the remedy provided for by Ohio law. O.R.C. §2323.52 was drafted and enacted to curtail excessive litigation by *pro se* litigants. It does not apply to attorneys who are representing parties other than themselves, or to parties represented by attorneys, and the statute does not authorize the Courts to place such an order on attorneys representing parties.

Therefore, this Court's order of April 20, 2005, prescribing Lomaz's obligations with respect to filing or continuing any litigation, is not supported by Ohio law to the extent these obligations could be imposed on legal counsel representing Lomaz or Lomaz controlled entities. Under Ohio law, attorneys may file any pleadings for any party they choose, subject to their professional obligations, and under pain or penalty of any consequences that may ensue for filing improper pleadings. This determination, under Ohio law, is made on a case by case basis, by the court wherein each particular action is sited. Accordingly, Lomaz respectfully requests the order of April 20, 2005, be altered or modified to reflect the fact that it (can) only apply to Lomaz as a *pro se* litigant, and not to his retained counsel.

### C. Lomaz is not a "vexatious litigator"

As previously discussed, a "vexatious litigator, is a person who has habitually, persistently, and without reasonable grounds engaged in vexatious conduct in the civil action or actions..." In this case, it is clearly evident that Lomaz is not a "vexatious litigator". To the contrary, Lomaz has been successful in a multitude of actions in which he has been a *pro se* litigant; and, most importantly, before matters in the federal courts as referenced above.

As recently as March 21, 2005, less than 30 days prior to this Court's entry declaring Lomaz as a vexatious litigator, the Stark County ("Ohio") Court of Appeals in *Conley v. Smith*, 2005 Ohio App. 1433; 2005 Ohio App. LEXIS 1396 (Fifth App. Dist.) determined that in a case where an attorney filed a motion for summary judgment against a former client, a *pro se* litigant, that the attorney's affirmation regarding case opinions where insufficient to determine as a matter of law that the [litigant] was a vexatious litigator. In fact, the trial court, had concluded that both parties "seem equally vexatious." The Court of Appeals noted that the [attorney's] summary judgment motion and supplemental memorandum include copies of previous court decisions and arguments about their relative merit.

The Court of Appeals observed that, "We note appellee is a *pro se* litigant and as a result, there appears to be a great flurry of motions with appellant also joining in a fray with numerous motions." (Emphasis supplied) In deciding the importance of ORC §2323.52 with respect to the standard of whether appellee's conduct was "habitually, persistently, and without reasonable grounds", the Court of Appeal held that "[S]urely the issues between parties are factually intense and lead to the necessity of different interpretations of the facts."

In short, this Court has been inundated by the filing of documents and related materials which seek to overwhelm Lomaz by the sheer volume of presentations to this Court. However, based upon the analysis of *Conley v. Smith*, it is inconceivable that Lomaz can be considered a vexatious litigator as defined under ORC §2323.52. A copy of the entire opinion of *Conley v. Smith* is found at Exhibit "M".

## CONCLUSION

First, this Court should find that ORC §2323.52 is not applicable to attorneys representing formerly *pro se* litigants in any court, including, particularly in courts not

enumerated in the statute. Second, this Court should also find that Lomaz is not a vexatious litigator as defined in applicable Ohio law, notwithstanding HNB's arguments to the contrary. The decision in *Conley v. Smith* should be dispositive of this issue.

WHEREFORE, based upon the foregoing, Lomaz respectfully requests this Court to grant the within motion to amend or alter this Court's judgment and vacate the declaration that Lomaz is a "vexatious litigator" and subject to any prohibition imposed by this Court in its April 20, 2005 order, as well as it applies to Lomaz's attorneys in conducting further proceedings on Lomaz's behalf and his affiliates.

Respectfully submitted:

/s/ Alexander Jurczenko
Alexander Jurczenko (0030918)
The Hilliard Building, Second Floor
1415 West Ninth Street
Cleveland, Ohio  44113
Telephone: (216) 771-4650
Facsimile: (216) 771-4629
E-Mail: a.jurczenko@gte.net

and

/s/ Eric R. Waite
Eric R. Waite (0068087)
520 South Main Street, Suite 2518
Akron, Ohio 44311
(330) 762-6334

Attorneys for Laurence De Leon Lomaz, Plaintiff

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true copy of the foregoing was filed electronically this 2nd day of May, 2005.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

The foregoing was mailed to the following parties by regular US mail, postage prepaid this 2nd day of May, 2005:

> David C. Tryon
> Porter, Wright, Morris & Arthur
> 925 Euclid Avenue, Suite 1700
> Cleveland, Ohio 44115

/s/ Alexander Jurczenko
Alexander Jurczenko (0030918)

and

/s/ Eric R. Waite
Eric R. Waite (0068087)

Attorneys for Laurence De Leon Lomaz, Plaintiff